UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| EULA FRANCINE BROOKS | § § § | |
| Plaintiff. | § § | |
| VS. | § § | CIVIL ACTION NO. 3:17–CV–00372 |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | § § § § § | |
| Defendant. | § § | |

## MEMORANDUM AND ORDER

Plaintiff Eula Francine Brooks ("Brooks") seeks judicial review of an administrative decision denying her claims for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, and for supplemental security benefits under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*

Before the Court, with the consent of the Parties, are competing Motions for Summary Judgment filed by Brooks and Defendant, Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration (the "Commissioner"). (Dkt. 9). Having considered the motions, responsive briefing, and applicable law, the Court DENIES Brooks's Motion for Summary Judgment (Dkt. 13), and GRANTS the Commissioner's Motion for Summary Judgment (Dkt. 14). The decision of the Administrative Law Judge ("ALJ") is AFFIRMED.

## I. BACKGROUND

Brooks filed a claim for social security disability benefits and supplemental social security income benefits under Title II and Title XVI of the Act, alleging disability as of July 9, 2014. Brooks's application was initially denied, and denied again upon reconsideration. Subsequently, an ALJ held a hearing and found Brooks was not disabled. Brooks filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final. This appeal followed.

## II. APPLICABLE LAW

Section 405(g) of the Act governs the standard of review in disability cases. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). The Commissioner's decision to deny social security benefits is reviewed by the federal courts to determine whether (1) the Commissioner applied the proper legal standard, and (2) the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance." *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987) (citation omitted). "Judicial review is to be deferential without being so obsequious as to be meaningless." *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986).

"[A] claimant is disabled only if she is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (citation, quotation marks, and emphasis omitted).

To determine if a claimant is disabled, the ALJ uses a sequential, five-step approach:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

"The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Salmond*, 892 F.3d at 817 (citation omitted). "Before reaching step four, the Commissioner assesses the claimant's residual functional capacity ('RFC'). The claimant's RFC assessment is a determination of the most the claimant can still do despite his or her physical and mental limitations and is based on all relevant evidence in the claimant's record. The RFC is used in both step four and step five to determine whether the claimant is able to do her past work or other available work." *Kneeland*, 850 F.3d at 754 (citations and internal quotation marks omitted).

The Commissioner's decision must stand or fall with the reasons stated in the ALJ's final decision. *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). *Post hoc* rationalizations for an agency decision are not to be considered by a reviewing court. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). "The reviewing court may not reweigh the evidence, try the questions *de novo*, or substitute its judgment for the

3

Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. Conflicts in the evidence are for the Commissioner, not the courts, to resolve." *Pennington v. Comm'r of Soc. Sec. Admin.*, No. 3:16-CV-230, 2017 WL 4351756, at *1 (S.D. Tex. Sept. 29, 2017) (citing *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).

### III. THE ALJ'S DECISION

The ALJ found at step one that Brooks had not engaged in substantial gainful activity since July 9, 2014.

The ALJ found at step two that Brooks had the following severe impairments: sarcoidosis, left rotator cuff tear, and obesity.

At step three, the ALJ found that none of these impairments met any of the Social Security Administration's (the "Agency") listed impairments.

Prior to consideration of step four, the ALJ assessed Brooks's RFC, as follows:

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can perform overhead reaching and handling with the left arm. The claimant also can perform the full range of sedentary work.

(Dkt. 7-3 at 27). At step four, the ALJ determined that Brooks "is capable of performing past relevant work as a laboratory technician" and such "work does not require the performance of work related activities precluded by [her RFC]." (*Id.* at 31).

At step 5, presumably out of an abundance of caution, the ALJ considered Brooks's RFC, age, education, and work experience in conjunction with the Medical Vocational Guidelines to determine if there was any other work she can do. At the time

4

of the ALJ's hearing, Brooks was 45 years old, with a high school education, and had previously worked as a laboratory technician. Based on the relevant factors, the ALJ concluded "a finding of 'not disabled'" was required because there were jobs that existed in significant numbers in the national economy that Brooks could still do. (*Id.* at 32). Accordingly, the ALJ determined that Brooks was not disabled under the Act and was not entitled to benefits.

## IV. DISCUSSION

In this appeal, Brooks asserts three arguments. First, Brooks argues that the ALJ failed to fully develop the medical record. Next, Brooks argues that the ALJ committed error when he found that her subjective complaints about the severity and extent of her physical limitations caused by back pain were not credible. Lastly, Brooks argues that the ALJ's RFC determination is not supported by substantial evidence because it is unsupported by any medical opinion in the record. The Court addresses each argument in turn.

### A.  DUTY TO FULLY AND FAIRLY DEVELOP THE RECORD

Brooks contends that the ALJ should have sought out certain unproduced medical records that would have supported her claim, including additional records from her treating physician Robert Beach, M.D. ("Dr. Beach") and records related to her mental health treatment and treatment for sarcoidosis at St. Vincent Clinic. In other words, Brooks interprets the ALJ's duty as one requiring the ALJ to seek out medical records that would substantiate any impairment/treatment mentioned in another medical record or mentioned in her testimony before the ALJ, while at the same time relieving her of any

5

obligation to provide those records. For the reasons explained below, this interpretation is untenable and misguided.

**Legal Standard:** "The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). "Generally, however, the duty to obtain medical records is on the claimant." *Gonzalez v. Barnhart*, 51 F. App'x 484, at *1 (5th Cir. 2002) (citing *Thornton v. Schweiker*, 663 F.2d 1312, 1316 (5th Cir. 1981)). An ALJ does not have the duty "to obtain all of a claimant's medical records before reaching a decision." *Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015). "[The 5th Circuit] has described the ALJ's duty as one of developing all relevant facts, not collecting all existing records." *Id.* (citation and internal quotation marks omitted). Thus, "the Court ... focuses on the ALJ's questioning of the claimant in order to determine whether the ALJ gathered the information necessary to make a disability determination." *Id.* (collecting cases).

A "court may reverse the ALJ's decision if the claimant can show that (1) the ALJ failed to fulfill his duty to develop the record adequately and (2) that failure prejudiced the plaintiff." *Id.* (citation and internal quotation marks omitted)

**Additional Records of Dr. Beach, Brooks's Treating Physician:** Dr. Beach completed a Residual Functional Capacity Questionnaire ("RFCQ") on December 17, 2016. In the RFCQ, Dr. Beach noted that he had been treating Brooks for eight months for sarcoidosis and arthritis, and Brook's symptoms included dyspnea on exertion, cough, and arthralgia. Based on these diagnoses, Dr. Beach indicated that Brooks's symptoms

6

would often interfere with her attention and concentration when performing work related tasks, and that, in an eight hour work day, Brooks would need to recline or lie down in excess of the normal break periods typically associated with a full-time position. Dr. Beach then described the following functional limitations:

> 8. As a result of your patient's impairments, please estimate your patient's functional limitations if your patient were placed in a competitive work situation on an ongoing basis:
>    a. How many city blocks can your patient walk without rest or significant pain? 1-2
>    b. Please circle the number of minutes that your patient can sit and stand/walk at one time:
>       SIT: 0 5 10 15 20 (30) 45 60    STAND/WALK: 0 (5) 10 15 20 30 45 60
>    c. Please indicate the total number of hours your patient can sit and stand/walk in an 8-hour workday:
>       SIT: 0 1 (2) 3 4 5 6 7 8    STAND/WALK: 0 (1) 2 3 4 5 6 7 8
>    d. Does your patient need a job which permits shifting positions at will from sitting, standing or walking? ☐ Yes  ☒ No
>    e. Will your patient need to take unscheduled breaks during an 8-hour workday? ☒ Yes  ☐ No
>       If yes, 1) How often do you think this will happen? hourly
>               2) How long will each break last before returning to work? 5-10 minutes
>    f. How many pounds can your patient lift and carry in a competitive work situation? ("Occasionally" means less than 1/3 of the 8-hour workday; "Frequently" means 1/3 – 2/3 of the 8-hour workday)
>
> |               | Never | Occasionally | Frequently |
> |---------------|-------|--------------|------------|
> | Less than 10 lbs. |       | ✓            |            |
> | 10 lbs.       |       | ✓            |            |
> | 20 lbs.       | ✓     |              |            |
> | 50 lbs.       | ✓     |              |            |

(Dkt. 7-14 at 29–30). Dr. Beach indicated that he expected Brooks to miss work three or four times a month, and in his opinion Brooks was physically incapable of working full time on a sustained basis.

The ALJ assigned "little weight" to the opinion Dr. Beach expressed in the RFCQ for the following reasons:

7

> (Exhibit 21F). The undersigned gives little weight to Dr. Beach's opinion because the record contains no supporting treatment notes to establish the length or nature of the claimant's treating relationship with Dr. Beach or to provide evidence of the findings upon which Dr. Beach based his opinion.

(Dkt. 7-3 at 31).

Brooks contends that Dr. Beach's opinion, as expressed in the RFCQ, "is based on some objective findings, which would be contained in [his] treatment notes," and the "ALJ's failure to obtain those notes before rejecting Dr. Beach's opinion is error ...." (Dkt. 13 at 15).

The Court has examined the medical record for Dr. Beach's treatment notes. The record contains two documents bearing Dr. Beach's signature. The first document merely lists Brooks's diagnosed ailments and identifies two symptoms related to the ailments. The second document also lists Brooks's diagnosed ailments. Neither document contains any explanatory notes nor references any objective medical tests. In this regard, Dr. Beach's treatment notes are substantially similar to his RFCQ because the RFCQ also does not contain any explanatory notes, references to objective medical tests, or rationale supporting the alleged physical limitations.

Although Brooks now argues that the conclusory nature of Dr. Beach's RFCQ should have caused the ALJ to seek out additional treatment notes, Brooks's counsel failed to raise this issue during the hearing before the ALJ, or in the subsequent letter requesting a rehearing. In fact, at the end of the ALJ's hearing, Brooks's counsel specifically mentioned Dr. Beach's RFCQ as follows:

8

> ALJ: All right, Counsel, was there anything else you wanted to tell me about the claim before we conclude?
>
> ATTY: Not at this time, no, Your Honor, just -- just that we do have a RFC in the record from treating physician in 21-F, Page 2 indicating a less than full-time competitive work on a consistent basis.
>
> ALJ: Thank you Counsel. Very well. If there is nothing further, then this hearing is concluded and we are off the record.

(Dkt. 7-3 at 88). Notably, Brooks's counsel did not then raise the issue of missing treatment notes supporting the RFCQ; rather, Brooks's counsel indicated his intent to rely upon the RFCQ as presented. Moreover, in the letter requesting a rehearing, Brooks's counsel forcefully argued that the ALJ should have afforded Dr. Beach's RFCQ controlling weight because it was "well-supported by objective evidence in his notes ...." (Dkt. 7-8 at 103). In the same letter, Brooks's counsel specifically cited Dr. Beach's treatment notes, discussed above.

Brooks does not offer any explanation for her counsel's failure to raise the issue of, or existence of, any additional treatment notes made by Dr. Beach.[1] To the extent Dr. Beach possessed additional unproduced treatment notes, Brooks should have known those treatment notes existed and were not part of the record before the ALJ. Yet she

---

[1] After the ALJ's decision, Brooks submitted additional evidence in support of her claim. Specifically, Brooks provided an additional letter dated May 6, 2017, which was signed by Dr. Beach and the Director of the St. Vincent Clinic, and an additional letter from the Family Service Center of Galveston County. Interestingly, although Brooks now complains the ALJ should have reviewed additional treatment notes from Dr. Beach, she never submitted any of Dr. Beach's treatment notes for consideration.

9

made no effort to raise the issue while at the hearing before the ALJ, made no effort to raise the issue as a basis for a rehearing, and otherwise wholly failed to produce the records. Thus, the ALJ's failure to review any additional treatment notes of Dr. Beach "is a direct result" of Brooks's own inaction and "not any error made by the ALJ." *McKim v. Colvin*, 2014 WL 4161782, at *4 (M.D. La. Aug. 19, 2014) (ALJ would not be blamed for lack of supporting medical records where claimant clearly failed to fulfill obligation to provide evidence of disability). The Court concludes that based on these facts, coupled with the fact that "[Brooks] was represented by counsel and ... had an opportunity to testify at the hearing regarding her disability[,] ... the ALJ was under no obligation ... to help get [Brooks's] medical records."[2] *Johnson v. Berryhill*, No. CV 17-2713, 2018 WL 3223512, at *6 (S.D. Tex. July 2, 2018) (citations omitted).

**Mental Health Records and Sarcoidosis Treatment:** Brooks contends that the record contained very limited evidence of her mental health treatment, which triggered the ALJ's duty to (1) obtain treatment notes from the St. Vincent Clinic or (2) order a consultative examination. Brooks argues that the ALJ failed to develop the record by not seeking out the medical records of St. Vincent Clinic and by not ordering a consultative examination. Brooks also seems to argue that the ALJ failed to develop the record by failing to follow the special psychiatric review technique to evaluate her mental impairments. In addition, Brooks argues that the ALJ should have requested and

---

[2] Although Brooks repeatedly indicates that additional treatment notes exist, Brooks does not give any insight into when the treatment notes were created, how many pages there are, or any specific details about the content of the treatment notes. Therefore, even if the Court agreed with Brooks that the ALJ erred, there is no evidence in the record suggesting that the ALJ's failure to review and analyze additional treatment notes actually prejudiced Brooks.

obtained a copy of St. Vincent Clinic's treatment notes that would have supported her testimony that she used a cane, inhaler, and nebulizer.

As explained above, the ALJ has the duty to develop all relevant facts, not collect all existing records. Here, it is worth noting that in her applications for benefits, Brooks did not seek recovery based on any mental health impairment. The only impairments she identified were a "back problem, [l]ung [d]isorder, [and s]houlder [p]roblem." (Dkt. 7-3 at 52, 64). Nonetheless, Brooks submitted some records from St. Vincent Clinic, which consisted of letters stating that Brooks was seen for various reasons including depression and anxiety, among other physical impairments, but included no examination or treatment records. In addition, Brooks submitted records from the Family Service Center of Galveston County, where she had been referred by the St. Vincent Clinic to receive mental health treatment. The ALJ considered all of these records. In the hearing, the ALJ also thoroughly explored Brooks's mental condition and related treatment history. Brooks's counsel did not raise the issue of an incomplete mental health record in the hearing, nor did he request a consultative medical exam. Similarly, Brooks's counsel did not raise the issue of an incomplete mental health record in his letter requesting a rehearing. In light of these facts, the ALJ was under no obligation to help Brooks obtain additional mental health medical records, and the Court "cannot say that a consultative examination was necessary to enable the ALJ to make a disability decision." *Gonzalez*, 51 F. App'x 484, at *1 (where the ALJ made "numerous inquiries" regarding claimant's medical condition and employment history, questioned the claimant, and inquired as to whether she desired to present additional evidence, ALJ did not fail in his duty to fully

and fairly develop the record and a consultative examination was not necessary to enable the ALJ to make a disability decision). *See also Manzano v. Berryhill*, No. 4:16-CV-3496, 2018 WL 1518558, at *9 (S.D. Tex. Mar. 28, 2018) ("Where a claimant is represented by counsel at the hearing and her counsel fails to request a consultative examination or specify the information requiring further development, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record.") (internal quotation marks omitted) (collecting cases).

Brooks's argument that the ALJ failed to follow the special psychiatric review technique is also without merit. The special psychiatric review technique, also known as the "special technique," is set forth in 20 C.F.R. § 404.1520a. "Under the special technique, [an ALJ] must first evaluate [a claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant] ha[s] a medically determinable mental impairment." 20 C.F.R. § 404.1520a. If the ALJ determines that the claimant has a medically determinable mental impairment, the ALJ must further implement the special technique by specifying the symptoms, signs, and laboratory findings that substantiate the presence of the impairment, and then rate the degree of functional limitations resulting from the impairment. *See id.* Thus, if the ALJ finds that a medically determinable mental impairment does not exist at step one, no further discussion is warranted.

Here, the ALJ thoroughly discussed Brooks's medical evidence regarding mental health services, specifically the adult psychosocial assessment completed by the Family Service Center of Galveston County, at the request of the St. Vincent Clinic, before determining that "the record fails to establish the existence of a mental medically

12

determinable impairment." (Dkt. 7-3 at 26). Because the record failed to "establish a medically determinable mental impairment, the ALJ was not required to move to the next step of the special technique and rate the degree of functional limitation resulting from the mental impairment." *Davis v. Colvin*, No. 1:15-CV-265-JCG, 2017 WL 888491, at *3 (S.D. Miss. Mar. 6, 2017) (collecting authorities). Thus, the ALJ did not commit an error in utilizing the special technique.

Brooks's final argument that the ALJ should have requested documents supporting her claimed use of a cane, inhaler, and nebulizer also fails. Assuming the ALJ's failure to obtain the treatment notes pertaining to her use of a cane, inhaler, and nebulizer was an error, Brooks has not offered any argument that, or explanation of how, prejudice resulted from such error. "A mere allegation that additional beneficial evidence might have been gathered had the error not occurred is insufficient to meet [her] burden" of demonstrating prejudice. *Jones v. Astrue*, 691 F.3d 730, 735 (5th Cir. 2012) (collecting cases).

In sum, the ALJ fulfilled his duty to adequately develop the record.

## B. CREDIBILITY DETERMINATION

Brooks next contends that the ALJ's credibility analysis is flawed. Specifically, Brooks argues that the ALJ's "determin[ation] that [her] allegations of severe back pain were not credible because she did not complain of back pain to her providers" amounts to "a mischaracterization of the evidence." (Dkt. 13 at 16). Brooks's argument concerning "mischaracterization" actually mischaracterizes the nature of the ALJ's determination.

As to Brooks's credibility on the issue of her back pain, the ALJ opined:

13

> The medical evidence of record does not support the claimant's allegations that she experiences constant back pain that radiates into her leg. As previously discussed, the claimant has reported back pain on few, if any, occasions since the alleged onset date and her physical examinations have returned little evidence of back tenderness or decreased lumbar spine range of motion since July 2014. (Exhibits 12F, 13F-16F). The undersigned finds it somewhat implausible that an individual would fail to regularly report back pain and leg pain if it were as constant and severe as alleged at the hearing. Given the lack of corroborating subjective complaints and objective findings since the alleged onset date, the undersigned is not persuaded by the claimant's testimony regarding the severity of her back pain symptoms and the extent of her physical limitations.

(Dkt. 7-3 at 30). With the ALJ's actual determination in mind, the Court turns to Brooks's argument.

**Legal Standard:** The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who had an opportunity to observe the claimant at the hearing. *See Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). "An ALJ must consider a claimant's subjective symptoms as well as the objective medical evidence, and those symptoms may support a finding of disability even without support from any objective medical data. The ALJ is not required, however, to give subjective evidence precedence over medical evidence ...." *Loya*, 707 F.2d at 214 (citations omitted).

"To prove disability resulting from pain, a claimant must establish a medically determinable impairment that is capable of producing disabling pain." *Davis*, 2017 WL 888491, at *4 (collecting authorities). "The ALJ must consider subjective evidence of pain, but it is within his discretion to determine the pain's disabling nature  Such determinations are entitled to considerable deference. Disabling pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment." *Wren v. Sullivan*, 925 F.2d 123, 128–29 (5th Cir. 1991) (citations omitted). "An ALJ's unfavorable credibility

evaluation will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and articulates reasons for discrediting the claimant's subjective complaints." *Gachter v. Colvin*, No. 4:13-CV-168-Y, 2014 WL 2526887, at *9 (N.D. Tex. June 4, 2014) (collecting cases).

**The ALJ's Unfavorable Credibility Evaluation:** Here, contrary to Brooks's argument, the ALJ did much more than simply determine that "she did not complain of back pain to her providers." (Dkt. 13 at 16). The ALJ first thoroughly discussed Brooks's medical records. Then the ALJ noted that Brooks's medical records reflected that she only sporadically complained about back pain after the date of her alleged disability, and physical examinations conducted in that time period have returned little evidence "of back tenderness or decreased lumbar range of motion." (Dkt. 7-3 at 30). The ALJ then compared the sporadic frequency of Brooks's complaints of back pain, and the objective medical evidence, with Brooks's testimony at the hearing. The ALJ found it "implausible that an individual would fail to regularly report back pain and leg pain if it were as constant and severe as alleged at the hearing." (*Id.*) In sum, the ALJ weighed the objective medical evidence and articulated reasons for discrediting Brooks's subjective complaints. The Court finds that the ALJ adequately explained his credibility determination and properly performed his function as the trier of fact. The Court cannot substitute its judgment for the ALJ's.

15

## C. THE ALJ'S RFC DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Finally, Brooks contends that the ALJ rejected all medical opinions dated before her disability onset date,[3] rejected the opinion of Dr. Beach, and ultimately gave only partial weight to the opinion of the state agency physician, Edwin Swann, M.D. ("Dr. Swann"). Based on these facts, Brooks argues that the ALJ's RFC determination is not supported by any medical opinion in the record.

**The ALJ Properly Rejected Dr. Beach's Opinion:** The RFCQ document is simply a form that Dr. Beach completed by circling certain pre-populated answer choices, checking certain pre-populated answer choices, and occasionally writing out a few narrative answers. Not one narrative answer contained more than three words—even though the RFCQ specifically requested that Dr. Beach "attach all relevant treatment notes, laboratory and test results." (Dkt. 7-14 at 29). Thus, Dr. Beach's opinion, as expressed in the RFCQ, represents the type of "brief and conclusory" statements that ALJ's are expressly empowered to, and routinely do, disregard. *See Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (finding good cause to assign little weight to a treating physician's questionnaire opinion "due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests or examinations"). And as explained

---

[3] Although Brooks notes that the ALJ rejected certain medical opinions that were made from 2008 through 2010, she does not actually offer any argument as to why this is improper. Notably, as acknowledged by the ALJ, the three RFC assessments performed in that time range all found Brooks to be less limited than the ALJ ultimately opined—i.e., she was capable of performing medium work. Given this factual reality, any error that the ALJ may have committed in rejecting such opinions is harmless.

16

above, the ALJ did not have the duty to further develop the record in an attempt to salvage Dr. Beach's conclusory opinion.

**Dr. Swann's Opinion is Substantial Evidence:** An "ALJ is entitled to resolve conflicts in the evidence and, after considering the record, conclude he would rely on objective medical facts and the assessment by the state agency medical consultants." *Vines v. Colvin*, No. SA-16-CV-249-PM, 2016 WL 6407972, at *7 (W.D. Tex. Oct. 28, 2016) (citations omitted). Indeed, "an ALJ may properly rely on an RFC assessment prepared by a state agency medical consultant, provided it is a function-by-function assessment" because "[s]uch an assessment constitutes substantial evidence, at least where it is not wholly conclusory." *Brown v. Astrue*, No. CIV.A.3:08-CV-0255-D, 2009 WL 64117, at *4 (N.D. Tex. Jan. 12, 2009) (citation omitted).

As explained above, the ALJ found that Brooks has the RFC to perform the full range of light work, except overhead reaching and handling with her left arm, and she can also perform the full range of sedentary work. This RFC was based on the ALJ's review of the objective medical records and, in part, on the RFC opinion offered by state agency physician Dr. Swann. Dr. Swann opined that Brooks has the RFC to perform light work, except she cannot perform overhead reaching and handling with her left arm. Dr. Swann also assessed various limitations on Brooks's postural and climbing activities; the ALJ rejected these limitations because they "are not fully supported by the objective physical examination findings of record, which provide little evidence to suggest [Brooks's]

17

impairments interfere with the ability to engage in positional maneuvers."[4] (Dkt. 7-3 at 31).

Accordingly, the ALJ properly reviewed and considered the evidence relating to Brooks's ability to engage in positional maneuvers in his RFC assessment and explained the reasoning underlying his decision to reject the state agency physician's opinion regarding the postural and climbing limitations. The ALJ's rationale is supported by credible evidentiary choices from among the medical record and demonstrates the existence of substantial evidence supporting the ALJ's decision. *See, e.g., CFR v. U.S. Comm'r, Soc. Sec. Admin.*, No. 11-CV-0633, 2012 WL 3257842, at *4 (W.D. La. June 22, 2012), *report and recommendation adopted*, No. 11-CV-0633, 2012 WL 3260272 (W.D. La. Aug. 8, 2012) (affirming the ALJ where "there were certainly credible evidentiary choices that he could make to arrive at an RFC ... that did not include the postural limitations found by the [state agency physician]" including the fact that based relevant Agency regulations "the ALJ may have properly determined that Plaintiff was capable of a full range of sedentary work even with such postural limitations").[5] Because

---

[4] Specifically, Dr. Swann found that Brooks could occasionally climb ladders/ropes and scaffolds; frequently climb ramps/stairs, stoop, kneel, crouch and crawl; and had no limitations in her ability to balance. Notably, Dr. Beach did not describe any of these postural limitations in the RFCQ.

[5] The combination of postural-manipulative limitations listed in Dr. Swann's report do not necessarily prevent Brooks from performing all or substantially all of the full range of light work or sedentary work. *See* SSR 85–15, 1985 WL 56857 at *6 (explaining that "where a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work," except in certain career fields not relevant here, such as a firefighter or construction painter); SSR 96–9P, 1996 WL 374185 at *7 ("Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a

18

this Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, remand on this issue is not required.

## V. CONCLUSION

For the reasons stated above, the Court DENIES Brooks's Motion for Summary Judgment (Dkt. 13), and GRANTS Defendant Nancy A. Berryhill's Motion for Summary Judgment (Dkt. 14). The decision of the Administrative Law Judge is AFFIRMED.

SIGNED at Galveston, Texas, this 16th day of July, 2018.

**ANDREW M. EDISON**
**UNITED STATES MAGISTRATE JUDGE**

---

full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work.").